IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYNN MARIE CARY LAGASSEY,                         3:13-cv-01551-MA

                 Plaintiff,                 OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.


LISA R. J. PORTER
KP Law, P.C.
5200 S.W. Meadows Road, Suite 150
Lake Oswego, Oregon 97035

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JORDAN D. GODDARD
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Lynn Marie Cary LaGassey, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant applications for DIB and SSI on October 25, 2006, alleging disability due to breast cancer, short-term memory loss, and joint pain. Tr. 189. Her applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held hearings on June 29, 2009, and September 9, 2009, at which Plaintiff was present and represented by counsel.[1] On September 22, 2009, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, Plaintiff timely filed a Complaint in this Court.

_____

[1] Plaintiff testified at the June 29, 2009, hearing. The ALJ conducted the September 9, 2009, hearing for the purpose of obtaining vocational expert testimony after receiving additional exhibits.

2 - OPINION AND ORDER

On August 13, 2012, this Court reversed the ALJ's decision and remanded to the Commissioner for further proceedings. Cary-LaGassey v. Comm'r Soc. Sec. Admin., No. 3:11-cv-00395-ST (#27), 2012 WL 3314087 (D. Or. Jul. 20, 2012), adopted by 2012 WL 3309713 (D. Or. Aug. 13, 2012). Accordingly, on May 13, 2013, the ALJ held another hearing at which Plaintiff was represented by counsel and testified. On June 11, 2013, the ALJ again issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review, Plaintiff instituted this appeal.

## FACTUAL BACKGROUND

Born on January 10, 1958, Plaintiff was 47 years-old on the alleged onset date of disability and 55 years-old on the date of the hearing on remand. Tr. 184. Plaintiff has a high-school education with some college, and past relevant work as a Radio Producer. Tr. 196.

Plaintiff alleges her conditions became disabling on September 1, 2005. Tr. 184. Plaintiff testified about her conditions and functional limitations at hearings on June 29, 2009, and May 13, 2013. In addition to her hearing testimony, Plaintiff submitted an Adult Function Report. Tr. 241-48.

George Shinbo, Plaintiff's friend, also testified at the June 29, 2009, hearing and submitted a letter. Tr. 1148-53, 1353. Thomas Blacklidge submitted a Witness Statement dated June 24,

2009.  Tr. 727-34.  Max LaGassey, Plaintiff's son, also submitted
a letter describing his mother's limitations.  Tr. 1352.  Patricia
Ayzerman, a vocational expert (VE), was also present throughout the
May 13, 2013, hearing and testified.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§
404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Each step is
potentially dispositive.  The claimant bears the burden of proof at
Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th
Cir. 1999).  The burden shifts to the Commissioner at Step Five to
show that a significant number of jobs exist in the national
economy that the claimant can perform.  See Yuckert, 482 U.S. at
141-42; Tackett, 180 F.3d at 1098.

At Step One the ALJ determined that Plaintiff has not engaged
in substantial gainful activity since the alleged onset date,
September 1, 2005.  See 20 C.F.R. §§ 404.1571 et seq., 416.971 et
seq.; Tr. 1090.

At Step Two the ALJ found Plaintiff's status post lumpectomy
with radiation, depressive disorder, and "substance dependency"
were severe impairments, and Plaintiff's anxiety disorder was a
non-severe impairment.  See 20 C.F.R. §§ 404.1520(c), 416.920(c);
Tr. 1090.

At Step Three the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 1090-91.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a range of light work except that she should not be required to do overhead work with her left arm, should have ready access to a restroom, and is limited to unskilled work with no more than occasional public contact.  Tr. 1091-97.

At Step Four the ALJ found Plaintiff is unable to perform all of her past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 1097.

At Step Five, however, the ALJ found that as of January 10, 2013, the date Plaintiff turned 55 years-old and entered the "advanced age" category, jobs did not exist in the national economy that Plaintiff could perform.  Prior to January 10, 2013, however, the ALJ found jobs existed in significant numbers in the national economy that Plaintiff could perform, including Mailroom Clerk and Electronics Worker.  Tr. 1097-99.

Accordingly, the ALJ found Plaintiff was disabled within the meaning of the Act, but not until the established onset date of January 10, 2013.

///

///

5 - OPINION AND ORDER

## ISSUES ON REVIEW

Plaintiff raises three primary issues on appeal. First, Plaintiff argues the ALJ erroneously rejected her testimony. Second, Plaintiff asserts the ALJ improperly discounted the lay testimony of Thomas Blacklidge, George Shinbo, and Max LaGassey. Finally, Plaintiff claims the ALJ demonstrated bias against her by offering a stipulation for an established onset date at the hearing and allegedly making similar legal errors as the ALJ made in the prior decision that was remanded to the Commissioner.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for

that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Plaintiff's Testimony

Plaintiff first argues the ALJ improperly rejected her testimony.   In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529.   First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.   Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).   Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.   Id. at 1281.   The ALJ's reasons for rejecting a claimant's testimony must be supported by substantial evidence in the record.   See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the

court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

**A.   Plaintiff's Testimony**

As noted, Plaintiff testified at hearings on June 29, 2009, and May 13, 2013, and submitted an Adult Function Report dated November 30, 2006.

**1.   June 29, 2009, Hearing Testimony**

At the June 29, 2009, hearing, Plaintiff testified that "extreme pain" in her right arm and elbow makes it so she cannot lift her arm or carry anything, and that she "tend[s] to drop things." Tr. 1124. Plaintiff reported she has difficulty getting dressed every day. Tr. 1125. Plaintiff also reported "terrible pain" in her legs that "comes and goes all night" and forces Plaintiff to lose sleep. Tr. 1127. In addition to the nighttime pain in her legs, Plaintiff testified she has pain in both hips, with the left hip being much worse than the right. Tr. 1130. On account of this pain, Plaintiff testified she can only walk approximately one block before requiring rest. Tr. 1130. In addition to her pain complaints, Plaintiff reported that she experiences urinary frequency and occasional incontinence. Tr. 1128-29.

As to her mental health limitations, Plaintiff testified that she "very much" has a problem with depression that began in 2005. Tr. 1131. As a result, Plaintiff testified that she sleeps much more than eight hours per day, does not leave the house often, does not eat much on account of lack of appetite, and has restless nights. Tr. 1132. Plaintiff reported that her concentration has become "way worse" since 2005 and she experiences daily crying spells. Tr. 1133, 1137. Plaintiff testified she also suffers panic attacks approximately once per week during which she experiences a racing heartbeat and crying spells. Tr. 1139

As to her functionality in daily activities, Plaintiff reported she must take four or five thirty-minute rest periods during a typical day. Tr. 1140. Plaintiff testified that she is responsible for approximately forty-five percent of the care of her son, who has some physical disabilities. Tr. 1134-35. Plaintiff reported, however, that she only performs approximately ten percent of the work around her house, and that she cannot carry laundry. Tr. 1140. Plaintiff specifically noted that she can carry less than ten pounds, can sit for approximately thirty minutes, and has trouble reaching in all directions, especially with her right hand. Tr. 1141-43. Overall, Plaintiff reported her pain ranges between a four and nine on a ten-point scale and that it is so severe that she is not functional greater than 50 percent of the time. Tr. 1144.

9 - OPINION AND ORDER

### 2.    May 13, 2013, Hearing Testimony

At the May 13, 2013, hearing, Plaintiff reported that she began having problems with alcohol abuse in approximately 2010 or 2011 that caused her to seek treatment.  Tr. 1187-88.  Plaintiff testified she enrolled in a one-year emergency preparedness certificate program that requires her to take approximately eight hours of classes per week.  Tr. 1191-92, 1195.

Plaintiff reported that she attempts to exercise by walking, but even with the right shoes she can only walk "a couple blocks." Tr. 1194.  When not at school, Plaintiff testified she rests, attends doctor's appointments, and reads.  Tr. 1196.  Plaintiff testified that her panic attacks and depression are controlled with medication, but that she still has "small" panic attacks.  Tr. 1202-03.  Plaintiff reported that her chemotherapy and radiation in 2005 and 2006 caused her to have memory problems, including difficulty remembering dates and numbers as well as forgetfulness. Tr. 1203-04.

### 3.    November 30, 2006, Adult Function Report

In her November 30, 2006, Adult Function Report, Plaintiff noted that in a typical day she sleeps late because of "sweating" and pain, eats breakfast before taking medication, and gets a ride to meetings or classes.  Tr. 241.  Plaintiff reported that she helps her son with homework and lays down to rest during the

afternoon and evening, but that her elbow and hip "usually hurt very badly at this time of day." Tr. 241.

Plaintiff wrote that her right arm became numb and painful after her breast cancer surgeries, and that these symptoms make it difficult to sleep. Tr. 242. As to impact on her ability to care for herself, Plaintiff reported her arm and hip pain makes it difficult to dress herself, care for her hair, feed herself, and do laundry and house cleaning. Tr. 242. In addition, Plaintiff reported that her standing and sitting limitations interfere with her ability to bathe. Tr. 242. Plaintiff wrote that her memory has been poor since chemotherapy and radiation. Tr. 243. Plaintiff reported that she can cook frozen meals, but that it takes approximately twice as long as it used to and she has difficulty dropping items, opening the refrigerator, picking up a gallon of milk, and squatting down to get cooking pans. Tr. 243. Plaintiff reported that "cleaning [and] laundry are very hard" for her because of her pain. Tr. 243. Plaintiff noted that she should not drive a car because of her memory problems and the risk that she may "blackout." Tr. 244.

As to her functional limitations, Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. Tr. 246. Plaintiff reported that she

11 - OPINION AND ORDER

can lift five-to-ten pounds, walk for one or two blocks before requiring five minutes of rest, and sit for 30 minutes at a time. Tr. 246.    Plaintiff reported she can only pay attention for 10 minutes at a time and that written instructions are better than spoken instructions.    Tr. 146.

**B.    ALJ's Reasons for Rejecting Plaintiff's Testimony**

The ALJ rejected Plaintiff's testimony because Plaintiff's activities of daily living throughout the record were inconsistent with her alleged limitations, clinical findings and objective medical evidence did not support Plaintiff's allegations, Plaintiff's mental health treatment has been brief and sporadic, and Plaintiff's depression and anxiety were controlled with medication.    Tr. 1092-94.    I conclude these reasons, taken together, amount to clear and convincing reasons to reject Plaintiff's testimony.

**1.    Activities of Daily Living**

As noted, the ALJ found that Plaintiff's activities of daily living in the record are inconsistent with her allegations of very significant mental and physical limitations.    I find this is a convincing reason, supported by ample evidence, to discount Plaintiff's testimony.

The ALJ specifically noted Plaintiff's allegations are inconsistent with reports that she traveled extensively in 2006 and 2007, including to Hawaii twice.    Indeed, on April 18, 2006,

12 - OPINION AND ORDER

Plaintiff reported to Regan Look, M.D., that she traveled to Hawaii and was pushed into water. Tr. 878. In fact, during this period, Plaintiff appears to have flown twice in two weeks. Tr. 1000. Again on May 1, 2007, Plaintiff told Dr. Look that she "traveled to Hawaii in the first part of the year." Tr. 789. In her November, 2006, Adult Function Report, Plaintiff asserted she could "no longer travel for work," and could only sit for 30 minutes at a time. Tr. 242, 246. The ALJ could reasonably find such extensive travel in 2006 and 2007 inconsistent with Plaintiff's allegations in her November, 2006, Adult Function Report.

The ALJ also found descriptions of some of Plaintiff's work activities during the alleged period of disability inconsistent with her allegations. For example, on February 7, 2008, Plaintiff reported that she was working part-time as a "personal assistant" for a family and was doing "tons" of laundry and dishwashing. Tr. 1894. On March 20, 2008, Plaintiff told Dr. Look that, while her hip had been hurting, "she has also been doing some additional work with vacuuming." Tr. 775. On July 5, 2012, Plaintiff reported she was working as an "organizer/cleaner," which, while "hard on her body," caused "depression because it is not what she wants to be doing 'with her life.'" Tr. 1850. The ALJ could reasonably find these activities were inconsistent with Plaintiff's repeated allegations that "cleaning and laundry are very hard" for her because of pain, that she "can't carry the laundry," that she does

13 - OPINION AND ORDER

"[l]ess than 10 percent" of her household work, and that during much of this time Plaintiff "had to pretty much live on the couch." Tr. 243, 1140, 1199.

The ALJ also noted Plaintiff reported several non-work activities inconsistent with her allegations. For instance, on July 9, 2009, less than two weeks after telling the ALJ she had "extreme pain in [her] right arm and right elbow, [her] whole right arm, [her] right shoulder," and that she could not "carry anything" or "lift up [her] arm," Plaintiff reported to Rebecca Cleeton, D.O., that "[s]he went kayaking." Tr. 1124, 1409. On September 24, 2008, Plaintiff was evaluated to have a muscle strain after "lifting heavy objects." Tr. 1427. On June 30, 2010, Plaintiff reported to Dr. Cleeton that she was "[d]oing more exercise." Tr. 1364. On January 10, 2013, Plaintiff told Wendy Neal, D.O., that "[w]alking hurts more at first and then helps to decrease pain overall," in contrast to her testimony four months later that she could not walk more than "a couple blocks," "because it hurts for me in my hips and my legs and my feet." Tr. 1194, 1864.

Inconsistency between Plaintiff's alleged limitations and reports of her activities of daily living is a compelling reason, readily supported by substantial record evidence, to reject Plaintiff's testimony. The ALJ property rejected Plaintiff's testimony on this basis.

///

## 2.    Medical Evidence Did Not Support Allegations

The ALJ also rejected Plaintiff's testimony because objective medical evidence and clinical findings did not support Plaintiff's allegations.   Notably, despite Plaintiff's allegations of very significant arm, shoulder, and elbow pain, such complaints are at best sporadic throughout the medical record.   On April 1, 2010, Plaintiff reported "some occasional arthralgias and myalgias in her arms and shoulders." Tr. 1551.   On January 10, 2013, Plaintiff reported "pain and numbness [in her] right arm," that was "[w]orse with activities such as vacuuming or upward reaching, causing weakness and significant increase in numbness," but "[n]o pain at forearm and elbow." Tr. 1864.   In September, 2009, three months after Plaintiff's initial hearing at which she testified of very significant arm pain, Plaintiff reported mild to moderate pain in her hips and back, but none in her upper extremities.   Tr. 1890. Plaintiff gave a similar report in March of 2008.   Tr. 1892.   On July 18, 2012, Plaintiff had a normal musculoskeletal exam with no muscle or bone pain.   Tr. 1772.   Accordingly, clinical findings did not support Plaintiff's testimony of very significant arm pain and limitations.

Plaintiff's allegations concerning memory problems were similarly not supported by clinical findings in the medical record. Throughout the extensive medical record, Plaintiff's memory was consistently found to be intact.   E.g. Tr. 773, 775, 779, 783, 789,

1356, 1360, 1386, 1399, 1411, 1427, 1548, 1766, 1782, 1883. Plaintiffs' care providers' repeated findings that Plaintiff's memory was intact does not support Plaintiff's allegations of significant memory limitations.

Finally, after review of the record I find that while the medical record is clear that Plaintiff experienced some musculoskeletal, neurological, and psychological symptoms in connection with her breast cancer treatment, the medical record as a whole does not support Plaintiff's allegations of very significant symptoms and limitations. Accordingly, the ALJ reasonably cited lack of support from the medical record to reject Plaintiff's subjective symptom testimony.

### 3.    Sporadic Mental Health Treatment and Control with Medication

Finally, the ALJ rejected Plaintiff's allegations of significant mental health symptoms and limitations because Plaintiff failed to seek consistent mental health treatment and because Plaintiff's depression and anxiety were controlled by medication. Although the ALJ is correct that Plaintiff sought little mental health-specific treatment until she sought treatment for alcoholism in 2011 and 2012, Plaintiff did seek some treatment before that through her oncologist and primary care providers. E.g. Tr. 506, 1050, 1357, 1366, 1411, 1551. Nonetheless, the ALJ is correct that Plaintiff reported her depression and anxiety were largely well-controlled on medication. Tr. 1057, 1203. Notably,

16 - OPINION AND ORDER

Plaintiff reported her depression was well-controlled on a moderate to low dose of medication less than two weeks before Plaintiff told the ALJ it caused significant symptoms. <u>Compare</u> Tr. 1057, <u>with</u> Tr. 1132. While Plaintiff did report some instances of significant depression and anxiety, the majority of reports concerning depression and anxiety suggest Plaintiff's symptoms were generally milder. <u>E.g.</u>, Tr. 1357, 1366, 1409, 1411, 1911. Accordingly, the ALJ reasonably cited relative control of Plaintiff's anxiety and depression symptoms to reject those instances in which Plaintiff described much more significant depression and anxiety symptoms.

In sum, I conclude the above reasons constitute clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony. The ALJ did not err in his consideration of Plaintiff's testimony.

## II.  <u>Lay Testimony</u>

Plaintiff next asserts that the ALJ cited insufficient reasons to reject the testimony of George Shinbo, Max LaGassey, and Thomas Blacklidge. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. <u>Id.</u>

///

///

17 - OPINION AND ORDER

### A.  Mr. Shinbo

George Shinbo testified at the June 29, 2009, hearing and submitted an additional letter dated April 2, 2013.  Tr. 1148-54, 1353.  At the hearing, Mr. Shinbo testified that he has known Plaintiff for between 30 and 40 years and sees her three or four times per week.  Tr. 1149-50.  Mr. Shinbo testified that Plaintiff experiences crying spells "almost every time I talk to her," that last for "a good hour, couple hours."  Tr. 1050-51.  Mr. Shinbo reported that Plaintiff has been "very irritable" since her breast-cancer surgery and becomes frustrated by frequent memory lapses.  Tr. 1151-52.  As to Plaintiff's speed and pace, Mr. Shinbo opined Plaintiff operates at about fifteen-to-twenty percent of the speed of a "normal woman about her age," and becomes fatigued easily.  Tr. 1153.

In his letter, Mr. Shinbo wrote that Plaintiff "cannot sit for any length of time" and that "her memory seems to have been affected."  Tr. 1353.  Mr. Shinbo reported that Plaintiff "cannot lift any weight," and "gets extremely depressed."  Tr. 1353.

The ALJ rejected Mr. Shinbo's testimony because it was inconsistent with Plaintiff's activities of daily living.  Indeed, as detailed above, the ALJ could reaosnably find that many of Plaintiff's activities as reflected throughout the record are inconsistent with Mr. Shinbo's testimony of very significant physical and mental limitations, including working at approximately

18 - OPINION AND ORDER

twenty percent of the speed of a normal person, the inability to lift "any weight," and the inability to "sit for any length of time." Tr. 1153, 1353. Accordingly, I conclude this was a germane reason to reject Mr. Shinbo's testimony.

### B.    Mr. LaGassey

Max LaGassey, Plaintiff's son, also submitted a letter on Plaintiff's behalf.  Mr. LaGassey provided background on his medical condition and his mother's breast-cancer treatment.  Mr. LaGassey reported Plaintiff was unable to cook for him, do his laundry or dishes, or drive him places. Tr. 1352.  Mr. LaGassey also noted that Plaintiff "has problems with concentration and forgetfulness," and "still has a hard time sleeping, sitting for a long time, walking far," and has hip and foot pain.  Tr. 1352.

The ALJ found that Mr. LaGassey's statements were not fully credible in light of Plaintiff's daily activities, specifically noting that Plaintiff provided much of the same care for another family that Mr. LaGassey said she was unable to provide for her own family. Tr. 1096.  For the reasons discussed above, I find this to be a sufficiently germane reason to discredit Mr. LaGassey's testimony.

### C.    Mr. Blacklidge

Thomas Blacklidge submitted a Witness Statement dated June 24, 2009, in which he reported that Plaintiff's pain interferes with her sleep and that depression causes her to sleep until the early

afternoon.  Tr. 728.  Mr. Blacklidge wrote that Plaintiff "cannot shower or cook for herself a lot of the time," is very fatigued and depressed, and has problems with her memory.  Tr. 728-29.  Mr. Blacklidge reported that Plaintiff has a lot of pain and nausea as a result of her medications, is not "'social' or normal at night when she takes her [medication]," and "has a hard time sitting or standing in a position."  Tr. 732.

The ALJ rejected Mr. Blackidge's testimony because it was inconsistent with reports of Plaintiff's activities of daily living throughout the record.  For the same reasons as above, I conclude the ALJ cited germane reasons to reject Mr. Blacklidge's testimony because the ALJ reasonably found Plaintiff's activities inconsistent with Mr. Blacklidge's reports of very significant physical and mental limitations.

Because the ALJ properly discredited the testimony of Messrs. Shinbo, LaGassey, and Blacklidge, I conclude the ALJ did not err in weighing the lay testimony.

## III. **ALJ Bias**

Finally, Plaintiff argues that ALJ demonstrated bias against Plaintiff in two ways.  First, Plaintiff argues the ALJ demonstrated bias by offering at the 2013 hearing to stipulate to an onset date of October 1, 2012, approximately three months before the onset date the ALJ ultimately found, January 10, 2013.  Tr. 1205-07.  Second, Plaintiff argues the ALJ demonstrated bias by

20 - OPINION AND ORDER

committing the same alleged legal errors as caused the initial remand. The Commissioner responds that, while the ALJ should not have attempted to negotiate a stipulated onset date, the ALJ's actions do not demonstrate bias against Plaintiff.

"'ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification.'" Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001)(quoting Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)). See also Bayliss v. Barnhart, 427 F.3d 1211, 1214-16 (9th Cir. 2005). To establish bias, the complaining party must demonstrate "that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Rollins, 261 F.3d at 858 (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)).

I agree with both Plaintiff and the Commissioner that the ALJ acted improperly in attempting to negotiate a stipulated onset date of disability. The ALJ's attempt to do so suggests a misunderstanding of the appropriate role of an ALJ in disability hearings. Nonetheless, the ALJ's error in judgment in this respect does not adversely reflect on his impartiality or ability to render fair judgment. I note the ALJ ultimately issued a thirteen-page decision that I find thorough, well-reasoned, and, as discussed in detail above, supported by substantial evidence. That the ALJ

unsuccessfully attempted to negotiate a stipulated onset date does not establish bias, even if the ALJ's efforts to do so were ill-advised.

Plaintiff's suggestion that the ALJ showed bias in rejecting Plaintiff's testimony and the lay testimony is without merit. Plaintiff's suggestion that the ALJ again erred in his consideration of her testimony as well as the lay testimony, the same grounds for this Court's 2012 remand of this matter, falls well short of establishing "that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Rollins, 261 F.3d at 858 (quoting Liteky, 510 U.S. at 551). The mere allegation that an ALJ made legal errors, especially those legal errors which are common in social-security appeals, does not come close to meeting the high standard of demonstrating ALJ bias. In any event, as discussed above, I find the ALJ did not commit the legal errors Plaintiff argues establish bias. Accordingly, Plaintiff's argument that the ALJ demonstrated bias by rejecting Plaintiff's testimony and the lay testimony is plainly without merit. I conclude Plaintiff has failed to rebut the presumption that the ALJ was unbiased.

///

///

///

///

22 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this **29** day of October, 2014.

Malcolm F. Marsh
United States District Judge

23 - OPINION AND ORDER